# Crown *v.* Carriger.

*Bill in Equity to enforce Vendor's Lien on Land ; Cross-Bill for Abatement of Purchase-Money.*

1. *False representations by vendor ; relief to purchaser against.*—If a false representation of a material matter of fact, not patent and open to the buyer's inspection, be made by a party proposing to sell; and the buyer, induced by such representation, and relying on its truth, accepts the offer, and closes the trade, without knowing the falsity of the representation, and is thereby deceived to his injury, the seller shall make good the representation. But, "if the representation was of a trifling or immaterial thing; or, if the purchaser did not trust to it, or was not misled by it; or, if it was upon a matter of opinion, or as to a fact equally open to the inquiries of both parties, and in regard to which neither could be presumed to trust the other; in these and the like cases, there is no reason for a court of equity to interfere to grant relief on the ground of fraud."

APPEAL from the Chancery Court of Russell.

Heard before the Hon. N. S. GRAHAM.

The original bill in this case was filed on the 17th February, 1877, by John H. Carriger, a citizen of Tennessee, against Nathan Crown; and sought to establish and enforce a vendor's lien on land for the unpaid purchase-money, as evidenced by the defendant's two promissory notes, which

were made exhibits to the bill; each of said notes being for $500, dated the 10th November, 1874, and payable on the 25th December, 1875, and 1876, respectively, at the Chatta-hoochee National Bank of Columbus, Georgia, with interest from date ; and each reciting on its face that it was given for "value received, in land lying and being in Russell county, Alabama." The defendant answered the bill, admitting the execution of the notes, and that they were given in part pay-ment of the purchase-money for a tract of land, which was correctly described in the bill, and which was situated in Russell county, Alabama, about four miles distant from Co-lumbus, Georgia ; and alleging that he was induced to enter into the contract by the complainant's false and fraudulent representations as to the value and productiveness of the land for a market garden, the number and value of the fruit trees on it, the quantity of wood-land, the good condition and character of the road leading into Columbus, and other par-ticulars enhancing the value of the land ; and he asked that his answer might be taken and treated as a cross-bill as to these matters, that he be allowed an abatement of the purchase-money to the extent of his loss and injury on ac-count of these false and fraudulent representations, as to which he prayed an account, and a decree in his favor for any balance that might be found due him. The answer and cross-bill alleged, also, that in part payment of the purchase-money for said land, the defendant had conveyed to said Carriger a dwelling-house and four tenement houses in Co-lumbus, Georgia ; that Carriger had sold these houses and lots, and had removed to Tennessee, having no property in either Georgia or Alabama, out of which any thing could be made by legal process. An answer to the cross-bill was filed by Carriger, denying the charges of fraud and misrepresenta-tion on his part, and alleging fraud and misrepresentation on the part of the defendant, as to the value of the property in Columbus, and its freedom from incumbrances, whereby complainant was greatly injured.

On final hearing, on pleadings and proof, the chancellor held that the evidence failed to establish the allegations of the cross-bill ; and he therefore dismissed the cross-bill, and rendered a decree for the complainant in the original bill as prayed. The decree dismissing the cross-bill, and granting relief on the original bill, is now assigned as error, with some rulings on exceptions to evidence.

J. M. RUSSELL, and L. W. MARTIN, for appellant.

GEO. W. HOOPER, contra.

STONE, J.—The *gravamen* of the cross-bill consists in alleged fraudulent misrepresentations by Carriger, the seller, which induced Crown to purchase. The misrepresentations charged are, that Carriger falsely stated the profits he had realized during the years then past, from the cultivation of the lands as a market and fruit farm, at a sum greatly above the true amount; that he over-stated the quantity of timber land on the tract; that he stated the value and productiveness of the land much too high, and he affirmed the market road to be a good one, when in the winter and spring of the year it was almost impassable. It is charged, also, that Carriger, in negotiating the sale, deceived Crown by showing him the best land, and falsely telling him, or leading him to believe, that the rest of the tract was equal to the part shown. Only the contracting parties were present, when Carriger showed the lands to Crown. Crown made a second examination of the land, when Carriger's agent—not himself—was present. The negotiation was pending some months, before the trade was consummated by writing. Both parties were examined as witnesses; and, on all material questions, they are in direct antagonism. Carriger, in his testimony, makes his statement of what took place; and if his version be true, he is without fault. He sets forth that he made certain representations, and that they were true. Crown swears the opposite of all this, and proves by a female witness, a near relative, that before the trade was made, she heard Carriger, in Crown's store, and to Crown, boasting of the fertility and productiveness of the said farm. She testifies, also, to some other things, tending to show that neither the land nor the market road was as good as Carriger represented them to be. There is an entire absence, save what Carriger swears, of what had been the products and profits of the farm before Crown purchased. Hence, Carriger stands uncontradicted by any direct proof bearing on this question.

Against this phase of the controversy, it is shown that the houses and lots in the city of Columbus were received by Carriger, in part payment of the land, at an agreed value of about three thousand dollars; that Crown represented them as worth that much; and Carriger and his agent testify that they were worth less than half that sum. This testimony tends, also, to show that Crown over-stated the rental value of the tenement houses he thus traded and conveyed to Carriger. The chancellor dismissed the cross-bill, and granted relief on the original bill.

It is the law of this State, that if a false representation of a material matter of fact be made by a proposed seller, the matter of fact not being patent and open to the buyer's in-

[Dudley v. Chilton County.]

spection; and, induced by such representation, and relying on its truth, the buyer accepts the offer, and closes the trade, without knowing the falsity of the representation, and is thereby deceived to his injury, the seller shall make the representation good.—*Munroe v. Pritchett*, 16 Ala. 785; *Gibson v. Marquis*, 29 Ala. 688. "If the representation was of a trifling or immaterial thing; or, if the other party did not trust to it, or was not misled by it; or, if it was upon a matter of opinion, or fact equally open to the inquiries of both parties, and in regard to which neither could be presumed to trust the other; in these and the like cases, there is no reason for a court of equity to interfere to grant relief upon the ground of fraud."—1 Story's Equity, § 191; *Juzan v. Toulmin*, 9 Ala. 662; *Kelly v. Allen*, 34 Ala. 663.

The matters relied on for relief in this case, leaving out the averments that are not sustained by convincing proof, are matters of opinion and judgment, and we find no reason for disturbing the conclusion of the chancellor.

Affirmed.