# New Orleans & Ala. Coal & Mining Co. *v.* Musgrove.

*Bill in Equity to enforce Vendor's Lien on Land; Cross-Bill for Rescission of Contract.*

1, *Misrepresentations of vendor, as ground for rescission of contract.* A court of equity will rescind a contract for the sale of land, at the instance of the purchaser, on account of the vendor's false representation of material facts not open to inspection, upon which the purchaser had a right to rely, did rely, and was thereby injured; but, if the representation related to a matter equally open to the inspection or inquiries of both parties, or if the purchaser did not in fact rely on it, but sought and relied on other sources of information, or if he negligently failed to use the means and opportunities in his power to ascertain the facts, relief will not be granted to him.

APPEAL from the Chancery Court of Walker.

Heard before the Hon. THOMAS COBBS.

Bill in equity of L. B. Musgrove and J. C. Musgrove, against the New Orleans & Alabama Coal & Mining Company, and Fred. Sloss as trustee, to enforce a vendor's lien on land for a balance of purchase-money alleged to be due and unpaid; cross-bill for rescission of contract, on ground of misrepresentation of material facts. On final hearing, on pleadings and proof, the chancellor dismissed the cross-bill, and rendered a decree for the complainants as prayed in the original bill; and his decree is here assigned as error.

[New Orleans & Ala. Coal & Mining Co. v. Musgrove.]

SMITH & LOWE, and TALIAFERRO & SMITHSON, for appellants,. cited 1 Story's Equity, §§ 141–48; Bigelow on Fraud, 523–4; *Moore v. Clay*, 7 Ala. 742; 3 Greene, N. J. Ch. 212; 7 C. E. Greene, N. J. Ch. 54.

GUNTER & SOWELL, and HEWITT, WALKER & PORTER, *contra*, cited *Chapman v. Lee*, 55 Ala. 616; *Green v. Casey*, 70 Ala. 417; *Slaughter v. Gerson*, 13 Wall. 379; *Tabor v. Peters*,. 74 Ala. 90; 1 Whart. Contracts, 245, note 3; 2 Pom. Equity, § 893, note on p. 379; *Steele v. Kinkle*, 3 Ala. 352; *Crown v. Carriger*, 66 Ala. 590; *Brown v. Leach*, 107 Mass. 364;. *Rubber Co. v. Adams*, 40 Mass. 356.

CLOPTON, J.—No principle is better settled, or more uniformly recognized, than that a court of equity will interfere to rescind a contract of sale of land, into which the purchaser has been induced to enter by the vendor's false representations of material facts, not patent or open to his inspection, upon which he had a right to rely, and did rely, whereby he was injured,. and without the existence of which the contract would not have been made. But the rescission of a contract is not a. matter of discretion; the court must be governed by established rules and precedents. Essential elements of a misrepresentation, to be rendered available to rescind a contract, are,. that the party to whom it is made must be justified in relying,. and must rely upon the representation, and it must be an immediate cause of his entering into the contract. If he did not. rely upon it, or was misled by it, or if it was a fact equally open to the inquiries of both parties, and nothing done to prevent or obstruct or lull inquiry, the court will not interfere to grant relief.—*Crown v. Carriger*, 66 Ala. 590. In *Slaughter v. Gerson*, 13 Wall. 369, it was ruled, where the means of knowledge are at hand, and equally available to both parties,. and the subject of purchase is alike open to inspection, if the purchaser does not avail himself of these means and opportunities, he will not be heard to say that he has been deceived by the vendor's misrepresentations; and that the same rule obtains, when the complaining party does not rely upon the representations, but seeks means of verification of the statements from other sources, and acts upon the information thus obtained. And in 2 Pom. Eq. Jur., § 893, the rule is stated as. follows: "If, after a representation of fact, however positive, the party to whom it was made institutes an inquiry for himself, has recourse to the proper means of obtaining information, and actually learns the real facts, he can not claim to. have relied on the misrepresentation, and to have been misled

[New Orleans & Ala. Coal & Mining Co. v. Musgrove.]

by it. Such claim would simply be untrue. The same result must plainly follow, when, after the representation, the party receiving it has given to him a sufficient opportunity of examining into the real facts, when his attention is directed to the sources of secret information, and he commences, or purports or professes to commence, an investigation. The plainest motives of expediency and of justice require that he should be charged with all the knowledge which he might have obtained, had he pursued the inquiry to the end with diligence and completeness. He can not claim that he did not learn the truth, and that he was misled."

The deed executed by the appellees to Fred Sloss, trustee, expresses the consideration of one hundred thousand dollars, which was intended as the payment for eight thousand acres of mineral lands; but the deed really conveyed more than that quantity. The lands to be accepted were dependent upon the approval of the titles by the attorney of the purchasers, and the number of acres being unascertained and uncertain, a written contract was entered into, by which Sloss agreed that should the lands conveyed by the deed exceed eight thousand acres, that he, as trustee, in addition to the one hundred thousand dollars, was to pay for the excess at the same price—twelve and a half dollars per acre. Appellees, having filed the bill to enforce a vendor's lien for the purchase-money of the acreage in excess, defendants, by way of defense, filed a cross-bill, seeking thereby to have the contract rescinded, the deed of complainants set aside and annulled, and a lien on the and declared for the repayment of the sum of one hundred thousand dollars paid by them to complainants. The main grounds upon which the rescission is sought are, that complainants made false representations as to the situation and location of the lands, and the quantity of the excess of acreage; the alleged representations being, that the lands were situated in a contiguous, compact body, and the excess of acreage was inconsiderable and trifling. There is also an allegation, that complainants had no title to a small portion of the lands, but this is disproved by the evidence.

The proof clearly establishes the following facts:

1.   The lands were purchased by individuals proposing to organize as a corporation, and who were subsequently incorporated under the name of the "New Orleans and Alabama Coal and Mining Company," and the deed was made to Sloss as trustee for the use and benefit of the corporation, when formed, to which the lands were subsequently conveyed by him. The promoters originally intended the purchase of about eight thousand acres, but the deed, which was prepared, con-

[New Orleans & Ala. Coal &·Mining Co. v. Musgrove.]

taining more than that quantity, and the number of acres, the titles to which would be approved, being unascertained, the written contract was entered into, by which Sloss, as trustee, agreed to pay for the excess of eight thousand acres at the same price.

2. In the deed, which contains a large number of tracts, the lands are described by section and sub-divisions of sections according to the government survey, the number of acres in each tract being stated, but not the aggregate amount. The deed was open to the inspection of defendants, and their attorney employed to examine the title, for two or more months, during which time the latter was engaged in examining the title, and complainants in curing the defects found therein. The attorney drew the form of the deed in the first instance, and, after it was filled up with a description of the lands, made several corrections by striking· out lands to which the title could not be perfected, and inserting those to which they had been perfected ; and after the final corrections were made, it was executed by the complainants, and with the conveyance of Sloss describing the lands in the same manner, was delivered to the defendant corporation, upon the payment of the one hundred thousand dollars.

3. One or more of the purchasers examined the lands ; also, an expert was sent to examine them, and upon his report and the recommendation of Sloss, the lands were purchased. During the negotiations, the complainants placed before the purchasers a map showing the situation and location of the lands, and clearly showing that they did not lay in a contiguous, compact body; this map was retained and produced by defendants.

The deed and written contract, being·cotemporaneously executed, must be read and interpreted as parts of the same transaction, and as constituting and showing the terms of the contract of sale. · The contract was written by the attorney of defendants, and there is no pretense that, by inadvertence or mistake, it contains more than the parties intended, or any thing materially different from their intention. It is impeached on the sole ground, that the vendors misrepresented the excess of acreage. The deed upon its face showed the number of acres, the only requisition to ascertain the aggregate amount being the addition of the separate amounts in each tract, as stated in the deed, and the map fully disclosed the relative location of the tracts. The evidence does not clearly and satisfactorily show that the vendors made the representations as alleged· by defendants, and Sloss, who signed the contract, testifies that they stated the excess would be a few hundred

acres. That there would be an excess was understood by all the parties; the misunderstanding relating only to the amount. If admitted that they made the representations, it clearly appears the purchasers did not rely or act upon them, but sought information from other sources. They had at hand the means of knowledge, and of verification of the statements; the sources of information being furnished, and attention directed to them. They had ample opportunity of learning the real facts, and purported to make an investigation. There was no concealment of the facts; examination was not prevented; and the representations do not appear to have been made in a manner calculated to lull inquiry. If defendants failed to use the means of ascertaining the excess of acreage, and the situation and location of the lands, a court of equity will not interfere to relieve them from the consequence of their own want of ordinary care and diligence.

Affirmed.