(97 South. 539)

## STATE v. ALABAMA LAND & MINERAL CO. et al. (7 Div. 369.)

(Supreme Court of Alabama. June 28, 1923. Rehearing Denied Oct. 11, 1923.)

1. Appeal and error ⊗═931(6)—Incompetent evidence presumed disregarded.

Failure to pass on objections to evidence introduced was harmless, there having been sufficient legal evidence on which to base the decree; it being presumed under such circumstances that the court based its conclusion as to the facts on legal evidence, and rendered decree accordingly.

2. Public lands ⊗═54(9)—Title to school lands vested in certificate holder when purchase money was paid, without issuance of patent.

Under Code 1852, § 539, title to school lands sold by township trustees vested absolutely in the purchaser to whom the certificate of purchase had been issued, on his subsequently paying the purchase money and interest, without any patent from the state.

3. Public lands ⊗═54(9)—State, not having had title or been injured, cannot maintain suit to cancel patent to school lands as obtained by fraud.

Fraud without damages gives no right of action or ground for relief in equity; so, even if a patent to school lands was obtained from the state by fraud, it could not on that account maintain suit to have it declared void, it having had no interest in or title to the land when the patent was obtained, and not being damaged or injured by its issuance.

4. Public lands ⊗═54(9)—State, in suit to cancel patent to school lands as obtained by fraud, held not to have made necessary clear and convincing proof.

Complainant's necessary showing, by clear and convincing proof, in suit by the state to annul a patent to school lands as having been obtained by false representations under Gen. Acts 1915, p. 719, § 1, providing for issuance thereof on proof of adverse possession, under color of title, by the person in possession and his predecessors, for 20 years before May 1, 1908, held not made.

Appeal from Circuit Court, Calhoun County; A. P. Agee. Judge.

Bill by the State of Alabama against the Alabama Land & Mineral Company and others. From a decree for defendants, the State appeals. Affirmed.

Harwell G. Davis, Atty. Gen., and O. B. Cornelius, Asst. Atty. Gen., for the State.

The possession of real estate by a purchaser under an unrecorded deed is constructive notice only when its possession is open, notorious, and exclusive. Christopher v. Curtis-Attalla Lbr. Co., 175 Ala. 484, 57 South. 837. The mere claim of a right or title to land, not accompanied by actual possession, no matter how long continued such claim may be, and no matter how publicly the claim is made, is not sufficient to confer title as against the true owner. Veitch v. Hard, 200 Ala. 77, 75 South. 405. Ten years' open, notorious, and actual possession, without reference to such claim being continuous, exclusive, and under claim of ownership, is not enough to give title. Swindall v. Ford, 184 Ala. 137, 63 South. 651. Burden of proving adverse possession is on him who asserts and relies upon it. Alexander v. Wheeler, 69 Ala. 332. If misrepresentation of a material fact is acted on by the opposite party, it constitutes legal fraud. Code 1907, §§ 4298, 4299.

Lapsley & Carr, of Anniston, for appellees.

The purchaser from the school commissioner, under Clay's Digest 1837, p. 524, or from the township trustees, under Code 1852, §§ 527 to 546, who has paid the purchase money and has a certificate, acquires the legal title without patent. Code 1852, §§ 538, 539; Doe v. Godwin, 30 Ala. 242. Persons in adverse possession of sixteenth-section lands acquire title against the state. State v. Schmidt, 180 Ala. 374, 61 South. 293; Id., 232 U. S. 168, 34 Sup. Ct. 301, 58 L. Ed. 555; Prestwood v. Watson, 111 Ala. 604, 20 South. 600; Sou. Ry. Co. v. Cleveland, 169 Ala. 27, 53 South. 767. The bill is not sufficient, where it alleges fraud in general terms. Penny v. Jackson, 85 Ala. 67, 4 South. 720; Loucheim v. Bank, 98 Ala. 521, 13 South. 374. The burden of proof as to fraud is on the complainant; and fraud, to be actionable, must have been productive of injury to the status of complainant's legal rights. Hodges v. Coleman, 76 Ala. 103; Guardian Tr. Co. v. White Cliffs Co. (C. C.) 109 Fed. 523; Dickermon v. Northern Tr. Co., 176 U. S. 181, 20 Sup. Ct. 311, 44 L. Ed. 423.

MILLER, J. This is a bill in equity by the state of Alabama against the Alabama Land & Mineral Company, a corporation, William J. Brock and R. W. McFry. It seeks to have declared void for fraud and misrepresentations a patent issued by the state of Alabama to the Alabama Land & Mineral Company, which conveyed to it the S. E. ¼ and S. ½ of N. E. ¼ of section 16, township 13, range 10, in Calhoun county. The bill seeks to cancel a deed made afterwards by the Alabama Land & Mineral Company to William J. Brock, conveying to him the S. ½ of the N. E. ¼ of section 16, township 13. range 10. The bill also seeks to cancel a deed made afterwards by William J. Brock to R. W. McFry, by which he conveys to McFry 20 acres off the west end of the S. W. ¼ of the N. E. ¼ of section 16. There was an injunction obtained to prevent defendants from cutting and removing the timber during the pendency of this suit.

The bill alleges this was a part of the public school lands of the state, that the patent

was procured by fraud and misrepresentations, and that Brock and McFry were parties to the fraud and misrepresentations made to induce the issuance of the patent. The bill alleges:

"The said Alabama Land & Mineral Company represented to the state of Alabama that it had been in adverse possession of this land under color of title for more than 20 years prior to May 1, 1908; that Wm. J. Brock and R. W. McFry, in order to procure the issuance of said patent, made false and fraudulent affidavit as to the possession of said property, which induced the issuance of said patent, when, as a matter of fact, said land was wild and had never been in the possession of any one,"

—except persons who had portions fenced for pasturage; but these persons who had part of it inclosed do not claim it.

The defendants by answer admit that the land was at one time a part of the public school lands of the state of Alabama; but each defendant specially denies the statements in the bill that the patent from the state to this land was obtained or procured by fraud and misrepresentations. They aver it was rightfully and legally obtained. They also aver and state it is true the Alabama Land & Mineral Company and those under whom it claims the land had been for more than 20 years prior to May 1, 1908, holding this land in adverse possession under color of title, claiming to own it. They each aver that this land was legally sold by the township trustee under authority conferred upon them by the statutes, and that the defendant the Alabama Land & Mineral Company is the successor in title and interest of those persons to whom the lands were sold by the township trustee, and that by mistake and oversight no patent was issued by the state to the original purchasers, but the purchase money was paid and the purchasers placed in possession by the township trustees at the time of the sale. They aver that the Alabama Land & Mineral Company owns now 160 acres of land, that the defendant Brock owns now 60 acres of the land, and McFry owns now 20 acres of this land.

The court by decree held complainant, the state of Alabama, was not entitled to the relief prayed for in the bill as amended, dismissed it, and taxed complainant with the cost. The state of Alabama appeals from this decree, and it is one of the many errors assigned. The bill was filed June 30, 1919, the decree was rendered November 9, 1922, and it was submitted to this court June 14, 1923.

There are 20 errors assigned and argued. Those numbered 19 and 20 relate to the decree. No. 19 is that the court erred in rendering decree in favor of the defendants, and No. 20 is that the court erred in failing or refusing to render decree granting complainant the relief it seeks. The errors assigned and numbered from 1 to 18, both inclusive, relate to and are based on the court "failing or refusing to sustain objections" to evidence made by complainant. We find no ruling by the court on these objections of complainant. They are made in writing by the complainant, and they are referred to in the note of testimony; but we find no ruling thereon in the decree or elsewhere by the court.

[1] All the questions were answered, and all the evidence is in the record. We find there was sufficient legal evidence before the court upon which it could base its decree. So the failure of the court to pass on these separate objections of complainant to certain evidence was without prejudice to the state, and it will not work a reversal of the decree. This court, under such circumstances, will presume the court below based its conclusion as to the facts on legal evidence and rendered its decree accordingly. Brown v. Thomas, 202 Ala. 679, 81 South. 635, headnote 1; Meyer v. Mitchell, 75 Ala. 475, headnote 6; Nelms v. Kennon, 88 Ala. 329, 6 South. 744, headnote 3.

The complainant introduced in evidence a sworn statement made in writing in 1912 by J. H. Savage, which states that he knows these lands in this section 16; "that in year 1850 the township trustees of that township 13, range 10, * * * advertised and sold the S. ½ of N. E. ¼ of said section 16 to Slade Nabors"; and he further states under oath in this statement that in November, 1859, the township trustees of township 13, range 10, after advertising for sale this land, met on the premises of section 16, in Calhoun county, on the day named, and sold at public outcry to the highest bidder, in 80-acre tracts, the south half of the section. At the sale John Benson was the highest bidder for, and purchased, the S. E. ¼ of this section 16. The terms of sale were one-third cash and the balance secured by notes payable in one and two years, with interest from date. He states the one-third cash was paid by the purchaser, their notes were given for the balance of the purchase price, the notes were paid to M. J. Lunly, of Jacksonville, Ala., who delivered the notes to the makers thereof. He states:

"I attended said sale in November, 1859, and at the request of the said trustees, A. O. Stewart, Scott Nabors, Hiram Duggar, made memoranda of the sales for the trustees, giving name of purchaser of each tract as bid off."

J. H. Savage was at the time of making the affidavit, in June, 1912, "near 80 years old." He is now dead.

The evidence for the defendants showed that, at the sales of this section 16 by the township trustees between 1850 and 1860, Jim Yarbrough purchased this 240 acres of land involved in this suit; that he went in-

to possession of it, and paid the entire purchase price for it, and the trustees gave him a certificate of purchase. He built a house on the S. ½ of the N. E. ¼ of the section, and lived there 6 or 8 years. Then he sold and conveyed this 240 acres to Hiram Duggar. Several witnesses testified they saw the certificate of purchase given by the trustees to Yarbrough and the deed made by Yarbrough to Duggar; but the originals were lost and were not on record. Duggar lived on land joining this 240 acres and had a house on the land in question, in which he ran a still for years. Witnesses for the defendant testified that he sold and conveyed this land, 240 acres, to W. J. Brock, defendant in this case, in 1886. This conveyance was lost and not recorded. Brock in 1890 sold and conveyed this land to the Piedmont Land & Improvement Company. This deed was lost and not recorded. In 1918 Brock by another instrument conveyed this land, reciting facts of former sale and deed, to the defendant Alabama Land & Mineral Company. The Piedmont Land & Improvement Company conveyed this land by mortgage on November 1, 1893, to S. R. Smith and W. F. Smalley, Jr., as trustees, which instrument was recorded. These trustees foreclosed this mortgage in the chancery court. The register sold the land under decree of foreclosure, and the trustees, Smith and Smalley, Jr., became the purchasers, and conveyance was made to them as trustees on April 22, 1897, by the register. This conveyance was recorded. Smith and Smalley, Jr., as trustees, sold and conveyed this land to the Alabama Land & Mineral Company by deed on the 18th of May, 1904, which deed was recorded. W. W. Stringfellow, as assignee, sold and conveyed it by deed to F. R. Morrison, as trustee, on December 14, 1903, which was duly recorded. F. R. Morrison, as trustee, conveyed this land to the Alabama Land & Mineral Company on May 9, 1904, by deed which was duly recorded. Some of these conveyances did not accurately describe all of this land, but from the evidence it appears they intended to convey and describe the 240 acres, but made a clerical error in the description of it.

It is evident and conclusive, from the evidence of complainant and the defendants, that the township trustees of this section 16 sold this land involved in this suit between 1850 and 1860. The entire testimony indicates the purchase price was paid, and the testimony is in conflict as to the names of the purchasers. Under the statutes in the Code of 1852 the township trustees could call an election to be held to ascertain the sense of a majority of the white male inhabitants of the township over 21 years of age, voting in such election, as to sale or no sale of the school lands in the township. If on such election a majority voting in the election favored a sale of the land, the trustees, in the mode and manner required by the statute, could sell the land in lots at public outcry to the highest bidder. Sections 527 to 536, Code 1852. Section 536, Code 1852, provides:

"The provisions of this article, in relation to the sale of school lands, must be construed as directory only."

[2] The statute required the trustees to give to the purchaser a certificate of purchase, showing the quantity of land in acres, describing the lots purchased, and specifying the amount of the purchase money. Section 538, Code 1852. Section 539, Code 1852, states:

"Such certificate conveys to the person therein named, his heirs or assigns, a conditional estate in fee, to become absolute on the payment of the purchase money and interest."

Justice Stone, speaking for the court in Doe, School Com'r, v. Godwin, 30 Ala. 242, said:

"Under the act of 1837 it is provided that certificates of purchase, issued by school commissioners, and acknowledged according to its provisions, 'shall operate as a title, upon condition only that the whole payments [of the purchase money] shall be made.' Clay's Digest, 525, § 21. If the defendant below had complied with the terms of this statute, he had a good and valid defense."

When the township trustees issued the certificate to the purchaser as the statute directed, and the purchase money and interest were paid by the purchaser, then the absolute title to the land vested in the vendee without a patent from the state, by virtue of the statute. Section 539, Code 1852; Doe, School Com'r, v. Godwin, 30 Ala. 242.

[3] Under the evidence for the state and defendants, it appears, when the patent was issued by the state on October 28, 1918, to the Alabama Land & Mineral Company, the state of Alabama had no interest in this land. The state did not have the legal title to it at that time. The township trustees had sold it, they issued under the statute a certificate to the purchaser, the purchasers had paid the purchase price, and neither the state nor any department thereof claimed or held any notes, bond, obligation, or other contract of any one unpaid for the purchase of this land. This court, in Hodges v. Coleman, 76 Ala. 103, 119, declared the following rule:

"Fraud without damage is not sufficient to support an action, nor is it ground for relief in equity. Fraud can never, in judicial proceedings, be predicated of a mere emotion of the mind, disconnected from an act occasioning an injury to some one."

See, also, Mayer v. Sulzbacher, 76 Ala. 120, 218, in which the court said:

"Fraud without damage would give no right of action."

[4] If the patent was obtained by fraud, then the state would have "no right of action" or "ground for relief in equity," as the evidence clearly indicates it had no interest in or title to this land when the patent was obtained, and no damage or injury was sustained by its issuance. But was the patent obtained by the defendants from the state by fraud and false representations of material facts which will annul and cancel it, if any damage or injury was done by its issuance?

On September 25, 1915, the following act was approved by the Governor, and it is found in Gen. Acts 1915, p. 719, and reads:

"Section 1. That when a person is in possession of any sixteenth section land, under color of title, and has been in such possession for more than twenty years prior to the first day of May, 1908, and the state, nor any department thereof holds no note, bond, obligation or other contract of any one for the purchase money of such land, and the state superintendent of education, and the state auditor shall so certify, and the Attorney General shall certify that proof of adverse possession, by the person now in possession, coupled with his predecessor in possession, for twenty years prior to May the first, 1908, under color of title, has been made, which proof is satisfactory to the Attorney General, the secretary of state must issue a patent,. in the name of the state to such land, to the person entitled to under this act."

Under this act the patent was issued by the state. The defendant Alabama Land & Mineral Company made application in 1918, in writing, to the Attorney General of the state under that act for patent to the lands described in the bill of complaint. With the application this defendant filed a certificate from the state superintendent of education and the state auditor, stating that neither the state nor any department thereof holds a note, bond, obligation, or other contract of any one for the purchase money of the land. This appears in the record. It was offered by the state. This defendant also filed with the application an affidavit or affidavits that it and its predecessors in title have assessed and paid taxes on this land for more than 20 years. It was assessed and taxes paid on it in 1893 and 1894 by defendants' predecessor in title, and for some years thereafter, then it was assessed and taxes paid on it by the defendant. From 1893 to 1918, when the affidavits were made, this land appears on the land book and the abstract book for some of the years as not assessed by any one. The original assessment sheets could not be found. There was evidence that the land book was sometimes inaccurate as to the assessment of lands. From the evidence it does not appear that any fraud was designated or intended in the statement in the affidavits that the land had been assessed for taxes and taxes paid on it for more than 20 years. This defendant also filed with the application affidavit or affidavits stating this land was sold by the township trustees prior to 1895, and title passed from the purchasers from the trustees to the predecessors in title to defendant, and the weight of the evidence sustains these statements in the affidavits. The affidavits state, and the testimony sustains it, that this defendant or its predecessors in title had title to or color of title to this land for more than 20 years prior to May 1, 1908.

The affidavits also state that the title to this land, from the person who bought from the school trustees, passed to the Piedmont Land & Improvement Company, "and the actual possession under claim of ownership by said company and its successors in interest including the present owner, the Alabama Land & Mineral Company, had been in open, notorious, continuous, adverse, and exclusive possession for more than 10 years prior to the year 1908." The evidence shows this land was rocky, mountain land, covered with trees. There is evidence that the purchaser from the township trustees built a house on it prior to 1860, cleared a patch or garden spot on it, lived there 6 or 7 years, and then sold it to Hiram Duggar; that Hiram Duggar erected a still house on it, used it for many years, 20 or more, to make whisky, and sold the land to Brock; and that Brock used timber off of it to make boards, and that some trees, 50 or more, were afterwards sold and cut off of it by his successors in ownership.

These affidavits give no facts as to actual possession; simply state conclusions or opinions of the affiants. From the evidence in this case as to the land, its nature and quality, and the actual possession of it shown by the defendant and its predecessors in ownership, we cannot say that these statements were false, and that fraud was designed or perpetrated, or even intended, by these parties in making these statements in the affidavits as to possession of the land. The burdens of allegation and proof of fraud and false representations of material facts which will annul the patent rest on the state of Alabama. They must be clearly and fully proved; the proof must be clear and convincing. No relation of trust or confidence existed between the state and these defendants as to this land. Duy v. Higdon, 162 Ala. 528, 50 South. 378; Johnson v. Rogers, 112 Ala. 576, 20 South. 929; Bell v. Lawrence, 51 Ala. 160.

In N. O. & Ala. C. & M. Co. v. Musgrove, 90 Ala. 428, 7 South. 747, this court wrote, and it was quoted with approval in Johnson v. Rogers, 112 Ala. 578, 20 South. 930, as follows:

"No principle is better settled, or more uniformly recognized, than that a court of equity will interfere to rescind a contract of sale of land, into which the purchaser has been induced to enter by the vendor's false represen-

tations of material facts, not patent or open to his inspection, upon which he had a right to rely, and did rely, whereby he was injured, and without the existence of which the contract would not have been made. But the rescission of a contract is not a matter of discretion; the court must be governed by established rules and precedents. Essential elements of a misrepresentation, to be rendered available to rescind a contract, are, that the party to whom it is made must be justified in relying, and must rely upon the representation, and it must be an immediate cause of his entering into the contract. If he did not rely upon it, or was misled by it, or if it was a fact equally open to the inquiries of both parties, and nothing done to prevent or obstruct or lull inquiry, the court will not interfere to grant relief. Crown v. Carriger. 66 Ala. 590."

In Howle v. North Birmingham Land Co., 95 Ala. 389, 11 South. 15, this court declared this rule:

"The right to the rescission or cancellation of a contract, because of fraudulent misrepresentations, must be established by clear and convincing proof. A court of equity cannot grant such relief upon a probability, nor even upon a mere preponderance of the evidence. The representations themselves, and that they were falsely and fraudulently made, must be clearly established."

See Bailey v. Litten, 52 Ala. 282.

This burden was not met and overcome by the state by clear and convincing proof, the evidence of the state did not come up to this standard, this burden rests on the state, and we must hold the court did not err in denying it the relief desired, and in dismissing the bill of complaint as amended.

The decree is affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.