FEDERAL LAND BANK OF NEW ORLEANS *v.* COX *et al.*

(Division B. Sept. 26, 1938.)

[183 So. 482. No. 33300.]

Gordon & Gordon, of Liberty, for appellant.

Joe Upton, of Gloster, and J. T. Hutchison, of Summit, for appellees.

Argued orally by C. T. Gordon, for appellant.

Ethridge, P. J., delivered the opinion of the court.

The appellant, the Federal Land Bank, prior to December, 1930, had foreclosed a deed of trust on certain lands described in the bill here, and thereafter made a contract with Thomas C. Cox, one of the appellees, on the 23rd day of December, 1930, to sell and convey the lands described to him, on terms and conditions stated in the contract. In this contract Thomas C. Cox had contracted to pay taxes for 1931, and all subsequent taxes upon this property; and also to make certain payments set forth in the contract. The appellee, Thomas C. Cox, failed to pay the taxes for 1931, and permitted the land to be sold therefor, on the first Monday of October, 1932.

There had been no partial payment of taxes, under the law permitting taxes to be paid in installments. The regularity and legality of tax proceedings is here involved. The title matured in the purchaser, who appears to be the mother of Thomas C. Cox, and a portion of the land was assessed to the Federal Land Bank, and a portion to another party, the original owner of the land.

The tax not having been paid, in whole or in part, on the first Monday of September, 1932, the board of supervisors entered an order directing the tax collector to sell all lands for delinquent taxes on the first Monday of October, 1932. The tax collector proceeded to advertise the lands of the county on which taxes had not been paid, and such notice of sale was advertised in the newspapers of the county, the sale to be made on the third day of

October, 1932. On the day of the sale a son of the purchaser at the tax sale bid the land in for his mother. There is a dispute in the evidence as to which of the sons did so, but in view of the conclusion we have reached, this becomes unimportant.

When the assessment roll was made up by the tax assessor at the July meeting, 1931, an order was entered, directing that notice be given to the public to appear at the meeting of the board on the first. Monday in August, at which time the board would hear any complaints about the tax roll, and equalize or adjust the same before approving the equalization of such tax assessments. There was no recital in the minutes of the board of supervisors at the August meeting that any such notice had been given, and it appears, in fact, that none had then been filed with the board. The rolls were equalized, and the footings of the assessment sent to the State Tax Commission, which ordered certain property to be raised at varying percentages, as shown in the order of the Tax Commission on different classes of property.

On receipt of this order from the State Tax Commission the board of supervisors directed notice to be given to the public for hearings on such changes in the particular classes of property. On the 14th day of October, at the meeting to pass on such changes in the assessment roll, as ordered by the Tax Commission, the board entered an order in which it recited as follows: ''It appearing that the assessment of real and personal property for the year 1930 was made in due form as required by law by the assessor of said county, and that the real and personal rolls of said assessments was filed with the board of supervisors, and was corrected and equalized by the board after due notice to the tax payers at the July and August meetings, 1930, and that said rolls, were forwarded to the State Tax Commission of said state, as required by law, and that said Tax Commission ordered and directed certain increases and decreases on different classes of real and personal property in said county, and

that thereafter the said order of said State Tax Commission was modified by said Commission by a subsequent order, and that after due notice to the tax payers of said county the said order of the said Tax Commission making said increases and decreases and as modified, was approved by the board of supervisors, all of which has been duly entered on the minutes of the board of supervisors; It is thereupon ordered and adjudged that the assessment rolls of real and personal property of Amite county, Mississippi, now on file with the clerk, and as corrected and equalized by the board of supervisors at the July and August meetings, 1930, and with the following increases and decreases ordered by the State Tax Commission, to-wit: (setting out the classes so ordered) . . . and same is hereby adopted and declared and fixed as the correct and true assessment of the taxable assessment of the taxable property of said county for the year 1930,'' etc.

The deputy clerk of the Chancery Court, who kept the minutes of the board of supervisors, was examined as a witness, and testified that there was no entry on the minutes at the August meeting, or at the adjourned meeting from that meeting, showing that notice had been published as required by law; and, further, that he examined the files of the board in which the notice, if filed, should have been placed, but found none, and nothing to show that such notice had actually been filed with the board of supervisors, showing such publication of notice to the tax payers.

It will be seen from a reading of the order of October 14th that nothing is said concerning publication of notice to the taxpayers, and proof thereof; it is entirely silent concerning what was done, and what was before the board at that time. The testimony of the deputy clerk, who attended to such matters, and who was examined as a witness, shows that there was, in fact, no notice on file, and nothing in the way of a record to show that one had ever been filed.

This Court has decided a number of times that the minutes should show the notice to the tax payers, given in the manner prescribed by law; and that such notice must be actually filed with the board, to give the latter jurisdiction to equalize the assessment rolls. See Henderson Molpus Co. v. Gammill, 149 Miss. 576, 577, 115 So. 716; Board of Supervisors v. Ottley et al., 146 Miss. 118, 112 So. 466; Aden v. Board of Supervisors, 142 Miss. 696, 107 So. 753; Smythe v. Whitehead, 133 Miss. 184, 97 So. 539; Monroe County, To Use, etc., v. Minga et al., 127 Miss. 702, 90 So. 443. It might be that in the absence of positive proof, or some proof from which positive inference could be drawn, that the recital of due notice might raise a presumption that such notice was, in fact, given. As to this, it is not necessary here to decide, because the proof shows that there was, in fact, no notice and proof of publication thereof filed with the board at the August meeting, at which time it equalized the assessment between individuals.

The tax assessment rolls made up by the assessor in describing that part of the land which the Chancellor held to be void for uncertainty of description read as follows: "NW and W½ of SW section 8, township 1, range 3." It is unnecessary to decide this point because we are of the opinion that the whole proceeding was void for failure to have on file notice and proof of publication showing that notice was given. But the attention of the taxing authorities should be directed to the danger of omitting the proper figures to indicate the correct description of the land.

We are of the opinion that the Chancellor was correct in holding the bill to be multifarious as to the suit against the officers for failure to give the person assessed notice of the expiration of the time for redemption. The suit here involved grows out of different matters from the matter involved in the liability, if any, of the officers in failing to give the required notice.

The judgment of the Chancellor in holding the tax sale valid is reversed, and decree will be entered here canceling the tax sale to Mrs. Cox, mother of Thomas C. Cox; and also awarding judgment against Thomas C. Cox for the sum evidenced by the contract, less the payments made, together with interest and attorney's fees.

Reversed and rendered.