WEBB *v.* ANDERSON, et al.

In Banc. April 25, 1949.

(40 So. (2d) 189)

Satterfield, Ewing & Hedgepeth, and Roach & Jones, for appellant.

400

404

406

**Watkins & Eager,** for appellees.

**McGehee, C. J.**

The 280 acres of land involved in this suit were sold to the State for taxes on April 6, 1931. A portion of the land was patented by the State in 1941, to E. V. Moseley, Sr., and the remainder thereof to E. V. Moseley, Jr. Shortly thereafter, E. V. Moseley, Jr., sold his portion to his father, who conveyed all of the land to the appellee, Fred A. Anderson, Jr., on January 22, 1945; and the said appellee thereafter executed an oil and gas lease to Ed. H. Spencer, who assigned the same to the appellee Phillips Petroleum Company. They were all made defend-

ants in the bill of complaint filed by the appellant W. M. Webb, his oil and gas lessee, E. C. Harlin, Jr., and his assignee, Stanolind Oil & Gas Company. The suit seeks to cancel, as clouds upon the alleged title of the complainants, the tax sale to the State made on April 6, 1931, the patents issued to the Moseleys, respectively, and the conveyance to the appellee Fred A. Anderson, Jr., together with the oil and gas lease executed by him as aforesaid. There was no affirmative relief sought by the defendants under a cross-bill; they merely answered and relied upon the tax sale, patents from the State, conveyances from the patentees, and adverse possession of more than two years under Section 717, Code of 1942.

The order of the board of supervisors approving the assessment of real and personal property for the year 1930 was the same order that is set forth in full in the third paragraph of the opinion of this Court in the case of Federal Land Bank v. Cox et al., 183 Miss. 250, 183 So. 482, and the same was therein held to be void. In the opinion in that case, it was pointed out that the order was entirely silent concerning publication of notice to the taxpayers, and proof thereof advising them of the time for hearing of objections by taxpayers to the approval of the roll at the August meeting, or at any subsequent or adjourned meeting of the board.

The order being silent as to whether or not the notice had been published as required by law, the deputy chan-cery clerk, who kept the minutes of the board of supervisors, was examined as a witness in that case and testified that there was no entry on the minutes at the August meeting, or at the adjourned meeting from that meeting, showing that the notice had been published as required by law.

In the instant case, the present chancery clerk was permitted to so testify, but over the objection of the appellees, the objection being made on the ground that his testimony was an attempt to contradict the minutes of the board in that behalf; but, as above stated, the min-

utes were silent as to whether or not such notice had been published and as to whether or not the proof of publication thereof was on file. The objection to the testimony of the clerk in the present case was overruled, and he stated that no order of any kind was entered on the minutes of the board between the July and the October 1930 meetings of the board, relating to the hearing of objections before the board by the taxpayers, or the approval of said roll; and that after diligent search no proof of such publication could be found in his office.

The trial court held that the tax sale involved in the present case was valid, as the trial court had held in the case of Federal Land Bank v. Cox et al., supra, and further held that the defendants herein had sustained their claim of adverse possession to the land, as set forth in their answer, on the ground that such possession continued for a period of more than two years under Section 717, Code 1942, after the issuance of the patents and prior to the filing of this suit during the year 1946.

We are of the opinion that there was ample evidence before the trial court to sustain its finding that the complainants were barred from maintaining this suit by virtue of the said two-year statute of limitations, and our affirmance of the decree appealed from is based on that ground alone; and we hold that the decree is correct to the extent that it dismissed the bill of complaint on the ground of such alleged adverse possession.

The proof disclosed, and without any substantial conflict in the material testimony, that the land was formerly owned by one Allen Westbrook, who maintained his home on the land and cultivated a good portion thereof as a farm until his residence was destroyed by a tornado during the year 1920; that the land was very thin and poor for the making of crops and Allen Westbrook did not rebuild or repair his residence, and no one has resided on the land since that year; that through mesne conveyances the record title later became duly and legally vested in the appellant W. M. Webb, during the year

1930; that the said appellant permitted the land to sell for taxes on the 6th day of April, 1931, for the taxes due for the fiscal year of 1930; that he thereafter failed to redeem the same, but caused all of the timber to be cut therefrom during the latter part of the year 1931; and that thereafter he devoted the land to no use of his own and has never paid any taxes on the same.

It further appears that other landowners in the community had built fences along the lines of their own land, and with the result that by the year 1936, this land, together with four or five hundred acres of adjoining land, had become completely enclosed as a common pasture of the neighboring landowners, with the consent of appellant W. M. Webb, who, as hereinbefore stated, made no further use to himself of the land after causing the timber to be cut therefrom during the latter part of the year 1931; that these neighboring landowners continued to pasture the land under this common enclosure, and as licensees of the said W. M. Webb; and that most of them were still pasturing the same at the time of the filing of this suit in 1946, but they were doing this with the consent and permission also of the Moseleys, their lessee, Fred A. Anderson, Sr., and the appellee Fred A. Anderson, Jr., respectively, subsequent to the issuance of the patents during the year 1941.

It further appears from the undisputed evidence that within about thirty days after the issuance of the patents from the State to the Moseleys, they caused a survey of the land to be made, and caused a portable sawmill to be located thereon within less than sixty days after acquiring the patents, and with the result that thereafter all of the timber was cut and removed therefrom within the next ninety days, with the actual knowledge and observation of the said former owner, W. M. Webb, who made no protest to the Moseleys, or to the contractor who was cutting and logging the timber for them; that the appellant W. M. Webb knew at the time when he visited the land and saw the timber being cut, that the Moseleys had

obtained patents from the State for the land; and that he knew before the patents were issued that the applications of the Moseleys were pending with the state land commissioner and made no effort to exercise his preference as a former owner to obtain a patent in his own favor thereto.

It is shown that the Moseleys purchased the land from the State for the timber and pasturage purposes, but after cutting the timber the patentee E. V. Moseley, Jr., moved to the Delta and conveyed his portion of the land to his father, E. V. Moseley, Sr., who then decided not to go into the business of cattle raising as they had originally contemplated; that as sole owner, E. V. Moseley, Sr., executed five deeds of trust in favor of banks as security for loans of money on this land between the time he received the patent in 1941 and January1945, when he sold the same; that during the year 1943, he leased all of the land for pasturage purposes to Fred A. Anderson, Sr., who had purchased a great quantity of lands adjacent thereto; that the said Fred A. Anderson, Sr. and his son, the appellee Fred A. Anderson, Jr., used the lands during the years of 1943 and 1944 for pasturage purposes under the lease aforesaid from E. V. Moseley, Sr., and that Fred A. Anderson, Jr., then purchased the land from the said E. V. Moseley, Sr., on January 22, 1945, continued to pasture a herd of approximately seventy-five head of cattle thereon, kept the fences repaired between the land of his father and this land, and used posts cut from the land here in controversy; and that the Moseleys and the Andersons have kept all the taxes on this land fully paid every year since 1941, under their claim of ownership, but have permitted the adjoining landowners to continue using the enclosure of this and other lands for a pasture as mere licensees thereof for such purpose.

That none of the neighboring landowners have ever set up any claim of ownership to any part of this land or any right to use the same for pasturage purposes except

under the permission given by the appellant Webb in the first instance, and then by the Moseleys and Andersons subsequently to the issuance of the patents from the State thereto.

We are, therefore, of the opinion that the possession of the defendants was open and notorious in that it began with actual notice and knowledge on the part of the appellant W. M. Webb, and that the same was hostile, adverse, and uninterruptedly continued and exclusive insofar as the appellant W. M. Webb was concerned, and their claim of ownership was exclusive as to the other persons who pastured the land in recognition of the fact that they were mere licensees for such purpose.

It is urged, however, that in view of the fact that the appellees did not themselves enclose the land after their claim of ownership began and inasmuch as they used this and four or five hundred other acres within the enclosure in common with the neighboring landowners, their possession of this land was not exclusive; that if the Court should hold that the acts of the defendants in regard to this land were sufficient to constitute adverse possession, they would likewise have obtained title to the other lands in the large area enclosed which they also used for pasturage. However, we are of the opinion that the distinction lies in the fact that they were pasturing and using this land under claim and exercise of ownership and paying the taxes thereon, whereas they were not claiming any of the lands of the neighboring owners under any color of title or otherwise, and were not paying the taxes on any of such other lands, or exercising any supervision over the same.

We, therefore, hold that insofar as the former owner is concerned, his possession was invaded by the Moseleys and Andersons after the issuance of the patents and to such an extent, and for such a period of time, as to constitute a bar to the bringing of this suit by such former owner and his co-complainants under and by virtue of Section 717, Code 1942.

No decision of our Court directly in point is cited where a factual situation similar to that here involved has been before the Court on the issue of the exclusiveness of the adverse possession claim, and no useful purpose could be served by a review of our decisions on the question as to what is necessary to constitute adverse possession in general. A careful consideration of the texts and the decisions from other jurisdictions cited in the briefs of counsel fails to disclose that our conclusion in the instant case is incorrect. They may be distinguished from the case at bar on the ground that the claimant by adverse possession who was using the property in common with others, was without color of title thereto, or they may be distinguished under the general facts of the case. We shall not prolong this opinion further by attempting to make the differentiation.

The decree of the trial court in dismissing the bill of complaint will, therefore, be affirmed on the ground alone hereinbefore stated. ▮▮ However, we are of the opinion that the decree should be modified wherein it undertakes to grant affirmative relief to the defendants, in the absence of a cross-bill, by confirming their title; and we further modify the decree appealed from by eliminating therefrom the adjudication that the tax sale to the State here in question was valid, and we express no opinion on that issue since it is unnecessary to decide the question in this particular case where the decree may be affirmed on the other and sufficient ground that the suit is barred by the two-year statute of limitation hereinbefore mentioned. In other words, we pretermit any attempt to reconcile the cases of Federal Land Bank v. Cox, supra, and Pettibone v. Wells, 181 Miss. 425, 179 So. 336, on the question involved on the tax sale until it shall become necessary to do so for the disposition of an appeal.

Affirmed as modified.