107 So.2d 868

Lou S. BAILEY, as Executrix, et al.

v.

Carl M. SMITH.

6 Div. 241.

Supreme Court of Alabama.

Jan. 8, 1959.

Chas. W. Greer, Birmingham, for appellants.

Whitmire, Morton & Coleman, Birmingham, for appellee.

STAKELY, Justice.

This litigation grows out of a written contract executed on June 30, 1952, by Carl M. Smith (appellee) and R. A. Bailey, who is now deceased. R. A. Bailey died testate, leaving his estate to his widow,

Lou S. Bailey, for life with a remainder to Lynn Bailey, the only child of the deceased, and appointing Lou S. Bailey (appellant), as executrix of the will.

Suit for a declaratory judgment and other relief was brought by Carl M. Smith in the Circuit Court of Jefferson County, in Equity, against Lou S. Bailey, individually and as executrix of the will of R. A. Bailey, deceased, and against Lynn Bailey. The Leeds Telephone Company is also made a party respondent, but no relief is asked against it and it has filed no pleadings in the case.

The court rendered a decree overruling the demurrer of Lou S. Bailey individually and as executrix of the will of R. A. Bailey, deceased, and also overruling the demurrer of Lou S. Bailey as guardian of Lynn Bailey, a minor, who has joined in this appeal. The appeal here is from the aforesaid decree.

The allegations of the bill show in substance the following. For some time prior to August 28, 1951, Carl M. Smith and R. A. Bailey engaged as partners in the ownership and operation of a telephone business and telephone exchange at Leeds, Alabama. On August 28, 1951, Carl M. Smith together with R. A. Bailey and his wife, Lou S. Bailey, Eleanor M. Smith, the wife of Carl M. Smith, and Bill Dorrough became the incorporators of the Leeds Telephone Company, Inc., a public service corporation, under articles of incorporation filed in the office of the Probate Judge of Jefferson County, Alabama.

Under the certificate of incorporation Leeds Telephone Company, Inc., had an authorized capital stock of $100,000, divided into 1,000 shares with a par value of $100 each, of which 680 shares were subscribed and issued on incorporation, as follows: Carl M. Smith 334 shares; R. A. Bailey 334 shares; Lou S. Bailey 1 share; Eleanor M. Smith 1 share; Bill Dorrough 10 shares, total 680 shares.

Carl M. Smith and R. A. Bailey discharged their respective subscriptions for said shares by transferring and conveying to the corporation all the property, real and personal, owned by them as partners in and about carrying on the aforesaid telephone business. After incorporation the telephone business formerly owned and conducted by Carl M. Smith and R. A. Bailey, was carried on by the Leeds Telephone Company, Inc. The corporation was so engaged on the date of the filing of complainant's original bill.

From the creation of the corporation to the death of R. A. Bailey, Carl M. Smith and R. A. Bailey each continued to own in their respective names 334 shares of capital stock of the corporation and together had active charge of the management of the affairs and business of the corporation. By virtue of the ownership of their shares of stock Carl M. Smith and R. A. Bailey had voting control in the management of the affairs of the corporation.

On June 30, 1952, Carl M. Smith and R. A. Bailey entered into a written agreement providing in substance that in the event one of them should elect to sell his shares of stock in the corporation, the other should have the option to purchase the same, and also that on the death of one of them the survivor should have the right to purchase from the estate of the one deceased, sufficient shares of the stock of the corporation to acquire voting control of the corporation.

The instant controversy grows out of the disputed rights of Carl M. Smith under said agreement to purchase from the estate of R. A. Bailey, deceased, sufficient shares of the stock of the corporation owned by R. A. Bailey at the time of his death, which, when added to the shares owned by Carl M. Smith would give Carl M. Smith voting control of the corporation. This agreement is marked Exhibit A to the bill of complaint and made a part thereof. It will appear in the report of the case.

The allegations of the bill further show that the will of R. A. Bailey, deceased, was probated in the Probate Court of Jefferson County, Alabama, on January 8, 1957. Letters testamentary were granted to his widow, Lou S. Bailey, on January 8, 1957. The widow and Lynn Bailey are the only heirs at law and distributees of the testator. Together they constitute all of the beneficiaries under the aforesaid will. A copy of the will of R. A. Bailey, deceased, is also attached to the bill of complaint in this cause and made a part thereof. The will was made on July 1, 1950. It made no reference to the agreement in question as it was made two years prior to the date of the agreement. The testator bequeathed his property as follows:

"I give and bequeath to my beloved wife, Lou S. Bailey, all my property, both real and personal, which I shall be entitled upon my decease, for and during her life.

"Upon the death of my wife, Lou S. Bailey, I give and bequeath to my beloved child, Lynn Bailey, all of my estate, both real and personal, to have and to hold the same to her and her heirs and assigns forever."

The allegations of the bill further show that prior to the death of R. A. Bailey eleven additional shares of the authorized capital stock of the corporation, which were authorized but not issued at the time the corporation was created, were issued, so that at the time of the death of R. A. Bailey 691 shares of the capital stock of the corporation had been issued. At the time of the death of R. A. Bailey he owned 334 shares of said capital stock and Carl M. Smith owned 334 shares. The allegations of the bill further show that during the lifetime of R. A. Bailey the corporation issued 386 shares of nonvoting preferred stock. When R. A. Bailey died and on the date of the filing of the bill in this cause, said 691 shares of capital stock constituted all the voting stock of the corporation.

The bill of complaint further shows that within 30 days after the grant of letters testamentary to Lou S. Bailey upon the estate of R. A. Bailey, deceased, Carl M. Smith offered to purchase from the estate of decedent twelve shares of the capital stock owned by decedent when he died. It is further alleged that twelve shares of stock owned by decedent when added to complainant's 334 shares, making a total of 346 shares, would give complainant "voting control" of the corporation. It is further alleged that the price which complainant offered to pay the executrix for said twelve shares of stock, was determined in keeping with the agreement. The executrix refused to accept the purchase price and endorse and deliver the shares of stock to Carl M. Smith.

■ I. Under § 167, Title 7, appearing in the 1955 Cumulative Pocket Part of the Code of 1940, we are admonished to give the declaratory judgment act a liberal construction, the statute declaring that the purpose of the declaratory judgment act is to settle and afford relief from uncertainty with respect to rights, status and other legal relations. Wolff v. Woodruff, 258 Ala. 1, 61 So.2d 69; Dozier v. Troy Drive In Theatres, Inc., 258 Ala. 417, 63 So.2d 368. In Anderson on Declaratory Judgments, Vol. II, p. 1304, it is said: "The courts will take jurisdiction by resort to declaratory procedure and determine the meaning of the contract and the rights and liabilities of the parties."

We have in the instant case a situation where there is an actual controversy between the complainant Carl M. Smith and the respondent Lou S. Bailey, as executrix of the will of R. A. Bailey, deceased, as to the rights of the complainant under the terms and provisions of the aforesaid agreement, marked Exhibit A to this bill, to purchase from the estate of the decedent certain stock of the corporation known as

the Leeds Telephone Company, Inc., and as to the duty and obligation of the said executrix to accept the purchase price therefor and to endorse and deliver the shares of stock so purchased to the complainant. We, therefore, think that the court was correct in overruling the demurrer taking the point that the bill showed no justiciable controversy under the declaratory judgment act. Madison Limestone Co. v. McDonald, 264 Ala. 295, 87 So.2d 539.

II. We furthermore think that the court was correct in holding that the bill shows that the complainant is entitled to the relief of specific performance. Boozer v. Blake, 245 Ala. 389, 17 So.2d 152. Such relief is expressly provided for in § 163, Title 7, Code of 1940, where the bill shows a justiciable controversy which should be settled. Dozier v. Troy Drive In Theatres, Inc., 258 Ala. 417, 63 So.2d 368. We know of no reason why the executrix in her representative capacity is not bound by the contract made by the decedent. 33 C.J.S. Executors And Administrators § 189, p. 1168.

■ III. It is argued that there is no way under the allegations of the bill to interpret the meaning of the term "voting control" as used in Paragraph One of the contract. We do not agree. Under the Alabama statute each share of stock in a corporation carries with it the power of one vote, except where it is provided to the contrary. § 38, Title 10, Code of 1940; Western Grain Company Cases, 264 Ala. 145, 85 So.2d 395. Allegations of the bill show that the preferred stock has no voting power. § 39, Title 10, Code of 1940. Accordingly, ownership of a majority of the common stock of the Leeds Telephone Company carries with it the voting control of the corporation.

■ IV. There is no merit in the contention that the term "book value" as used in the contract cannot be given a meaning because of its uncertainty and ambiguity. On this demurrer at least, book value as set out in the contract will be given its ordinary meaning, which is the net worth of all corporate assets less all corporate liabilities. 5 Words & Phrases, Book Value, p. 693, and Cumulative Annual Pocket Part; 33 A.L.R. 366; 51 A.L.R.2d p. 610. In this connection, we think that when the sentence "In determining book value any insurance on the life of the deceased stockholder owned by and payable to the company and which is reasonably certain to be collected shall be taken into consideration," is read in its context, it shows that such insurance is to be taken into account as an asset on the books of the company when arriving at the book value of the stock whether the proceeds of the insurance have or have not been collected, provided the insurance is reasonably certain to be collected.

■ V. It is argued that since there is no ambiguity or uncertainty in the will of R. A. Bailey, deceased, there is no room for construction of this will. No need for construction because of ambiguity is alleged in the bill but the bill does pray for a construction of the will. However, the mere fact that the bill may pray for unwarranted relief does not make the bill demurrable, where the allegations of fact make a case for equitable relief and the bill contains a proper prayer. United Steel Workers Union A.F.L.-C.I.O. v. Manley, 267 Ala. 452, 104 So.2d 306; Creson v. Main, 260 Ala. 318, 70 So.2d 417. The court accordingly will not be put in error for overruling the demurrer to this aspect of the bill.

We conclude that the court was correct in overruling the demurrers to the bill as a whole and to each and every aspect thereof.

Affirmed.

LAWSON, GOODWYN and MERRILL, JJ., concur.